**Patrick LACROSS, et al.**

**v.**

**KNIGHT TRANSPORTATION, INC., et al.**

**Case No. EDCV 14–771 JGB (JCx)**

United States District Court, C.D. California.

Signed May 28, 2015

Brennan S. Kahn, Ellen R. Serbin, Todd H. Harrison, Perona Langer Beck Serbin and Mendoza, Long Beach, CA, Christina A. Humphrey, Leslie Joyner, Stanley D Saltzman, Marlin and Saltzman LLP, Agoura Hills, CA, James M. Trush, Trush Law Offices, Costa Mesa, CA, for Patrick LaCross, et al.

James E. Hart, Thomas J. Whiteside, Littler Mendelson, Irvine, CA, Richard H. Rahm, Littler Mendelson PC, San Francisco, CA, Carly M. Nese, Littler Mendelson PC, Los Angeles, CA, for Knight Transportation, Inc., et al.

**Proceedings: Order: (1) GRANTING Defendants' Motion to Transfer Venue (Doc. No. 46); (2) TRANSFERRING the Case to United States District Court, District of Arizona (Phoenix); and (3) VACATING the July 1, 2015 Hearing (IN CHAMBERS)**

JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

Before the Court is a Motion to Transfer Venue Under 28 U.S.C. § 1404(a) filed by Defendants. (Doc. No. 46.) The Court finds this matter appropriate for resolution without a hearing pursuant to Local Rule 7–15. After reviewing all papers filed in support of and in opposition to the Motion, the Court GRANTS the Motion and TRANSFERS the case to the United States District Court, District of Arizona. The Court VACATES the July 1, 2015 hearing on the motion.

## I. BACKGROUND

On March 3, 2014, Plaintiffs Patrick LaCross, Robert Lira, and Matthew Lofton

filed a class action Complaint against Defendants Knight Transportation, Inc. and Knight Truck and Trailer Sales, LLC ("Defendants"). (Compl., Doc. No. 1–3.) Defendants are Arizona-based businesses that provide freight and trucking services, as well as truck leasing and sales, throughout the country. Plaintiffs–long-haul truck drivers based out of California–allege Defendants misclassified them as independent contractors. (Compl.¶¶ 6, 16.)

Plaintiffs allege that, although they were officially designated as "Owner Operators," they were in fact treated as employees by Defendants. (*Id.* ¶ 16.) Plaintiffs allege a variety of wage-and-hour claims that flow from this misclassification, including claims for: (1) recovery of unpaid wages; (2) failure to provide meal periods; (3) illegal deductions from wages; (4) failure to provide accurate itemized wage statements; (5) failure to reimburse business expenses; (6) failure to timely pay wages upon separation; (7) civil penalties under California's Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2698 et seq.; and (8) unfair business practices. (*Id.* ¶¶ 51–168.)

On May 1, 2015, Defendants filed a Motion to Transfer Venue under 28 U.S.C. § 1406(a). ("Motion," Doc. No. 46.) The Motion contends that Plaintiffs entered two agreements—an "Independent Contractor Operating Agreement" and a "Tractor Lease Agreement" (the "Agreements")—which both contain forum-selection clauses mandating that Plaintiffs' suit be tried in Arizona. (Motion at 3–13.) Plaintiffs do not dispute that they signed the Agreements.

The Independent Contractor Operating Agreement ("ICOA," Doc. No. 46–3, Ex. 1) consists of 34 numbered paragraphs. The last paragraph, entitled "Choice of Fo-

rum," states in relevant part: "[t]he parties agree that any legal proceedings between the parties arising under, arising out of, or relating to the relationship created by this Agreement . . . shall be filed and/or maintained in Phoenix, Arizona." (ICOA at 38.)

The Tractor Lease Agreement ("TLA," Doc. No. 46–3, Ex. 2) also contains a forum-selection clause, which states in relevant part: "THE PARTIESS AGREE THAT ANY CLAIM OR DISPUTE ARISING FROM OR IN CONNECTION WITH THIS AGREEMENT . . . SHALL BE BROUGHT EXCLUSIVELY IN THE STATE OR FEDERAL COURTS SERVING PHOENIX ARIZONA." (TLA at 11.)

Based on these Agreements, Defendants' Motion requests that the case be transferred to the United States District Court in Phoenix, Arizona. (Motion at 1.) Plaintiffs opposed the Motion on May 11, 2015. ("Opp'n," Doc. No. 49.) On May 18, 2015, Defendants filed a reply. ("Reply," Doc. No. 56.)

## II. LEGAL STANDARD [1]

 "In the light of present-day commercial realities and expanding international trade[,] . . . [a] forum [selection] clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). When a case concerns an enforcement of a forum selection clause, section 1404(a) provides a mechanism for its enforcement and "a proper application of section 1404(a) requires that a forum-selection clause be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W.*

---

**1.** Unless otherwise noted, all mentions of "Rule" refer to the Federal Rules of Civil

Procedure.

*Dist. of Tex.,* —— U.S. ——, 134 S.Ct. 568, 579, 187 L.Ed.2d 487 (2013) (internal quotation omitted). Plaintiff bears the burden of showing the exceptional circumstances that make transfer inappropriate. *Id.* at 581.

■ In diversity cases, federal law determines the validity of a forum selection clause. *Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 513 (9th Cir.1988). The U.S. Supreme Court has held that forum selection clauses are presumptively valid and should only be set aside if the party challenging enforcement can "clearly show that enforcement would be unreasonable and unjust." *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). A "valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas,* —— U.S. ——, 134 S.Ct. 568, 581, 187 L.Ed.2d 487 (2013)

■ A forum selection clause may be deemed unreasonable under the following circumstances: (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought. *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 457 (9th Cir.2007).

### III. DISCUSSION

Plaintiffs contend the case should not be transferred for two reasons. First, Plaintiffs argue that the forum-selection clauses are unreasonable. (Motion at 1–14.) Second, Plaintiffs contend their claims are not within the scope of the clauses. (Motion at 14–16.) The Court is not persuaded by either contention, as explained below.

### A. The Forum–Selection Clauses Are Not Unreasonable

Plaintiffs argue the forum-selection clauses are unreasonable because: (1) they are the product of "overreaching;" (2) if the clauses are enforced, Plaintiffs will be deprived of their day in court; and (3) enforcing the clauses would contravene California public policy. Oddly, Plaintiffs only present evidence as to Plaintiff La-Cross; the Court is left to guess about the circumstances surrounding Plaintiffs Lira and Lofton consenting to the Agreements. Nevertheless, the Court finds that even LaCross has not presented sufficient evidence to establish that the forum-selection clauses in the Agreements were unreasonable.

### 1. The Clauses Are Not Products of Overreaching

■ Plaintiffs first contend that the inclusion of the forum selection clause was the result of overreaching. (Opp'n at 2–5.) Plaintiffs allege there are significant power differentials between themselves and Defendants, they had no opportunity to negotiate the terms of the agreement, they are unsophisticated in business practices, and they were denied notice of the forum-selection clause. (*Id.*)

■ Plaintiffs' first three contentions are not persuasive, as the Ninth Circuit has explained that "a differential in power or education on a non-negotiated contract will not vitiate a forum selection clause." *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1141 (9th Cir.2004) (citing *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)); *see also Mahoney v. Depuy Orthopaedics, Inc.,* 2007 WL 3341389, at *7 (E.D.Cal. Nov. 8, 2007) ("Overreaching" is a ground "short of fraud," and a mere showing of "non-negotiability and power difference" does not render a forum selection clause unenforceable); *E. & J. Gallo*

*Winery v. Andina Licores S.A.*, 440 F.Supp.2d 1115, 1126 (E.D.Cal.2006) (explaining that the "fact the distributorship Agreement was a form-type pre-printed document that was presented to [plaintiff] on a take-it-or-leave-it basis does not render the Agreement invalid for overreaching or as an "adhesion contract." Likewise, it does not make a difference that [defendant] is large corporation, and [plaintiff] is relatively smaller.)

The most significant allegation LaCross makes is that·he was not able to fully review the ICOA before signing it. La-Cross declares that he was not given a chance to have a copy of the agreement reviewed by an attorney before he signed it, and that Defendants' recruiter "essentially rushed .him to initial and sign the ICOA agreement." (Declaration of Patrick LaCross ("LaCross Decl."), Doc. No. 49–1 ¶¶ 3–4.) LaCross also declares that Defendants' recruiter never went through the· terms of the ICOA with him.[2] (*Id.* ¶ 4.)

■ However, a party seeking to avoid enforcement of the forum selection clause under the first exception must show that the inclusion of the *clause itself* into the agreement was improper; it is insufficient to allege that the agreement as a whole was improperly procured. *See Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Batchelder v. Nobuhiko Kawamoto*, 147

F.3d 915, 919 (9th Cir.1998). This distinction is significant here. A helpful example of the distinction comes from *Roberts v. C.R. England, Inc.*, 827 F.Supp.2d 1078 (N.D.Cal.2011). There, two plaintiffs sought to invalidate forum-selection clauses in agreements very similar to those in this case. 827 F.Supp.2d at 1086. The plaintiffs, who wanted to become truck drivers, paid $3,000 for driver training school, which they completed. *Id.* at 1081. Afterwards, they traveled to Salt Lake City, where they were presented independent contractor and truck leasing agreements (functionally equivalent to the ICOA and TLA here). *Id.* Plaintiffs alleged that they were not given notice of the forum selection clauses at the time they paid for the driving school, and asserted that the defendants had overreached because if the plaintiffs rejected the agreements in Salt Lake City, they would have lost thousands of dollars on meaningless training. *Id.* at 1086. The court explained that the plaintiffs' contention "goes to the contract as a whole and is not specific to the forum selection clause." The court thus held that the forum selection clause was not rendered unenforceable on the ground of overreaching. *Id.*

The Court finds that here, Plaintiffs' contentions likewise go to the contract as a whole. Plaintiffs do not allege, for· example, that Defendants misled them specifically about the meaning of the forum-se-

---

**2.** Defendants vigorously contest these statements, and have provided testimony from Tanya Jedras, the recruiter who LaCross met with when he signed the ICOA. (Declaration of Tanya Jedras ("Jedras Decl."), Doc. No. 56–1, Ex. 1. ¶¶ 1–3.) Jedras declares that she did not refuse LaCross's request to have a lawyer review the agreements, and that she routinely spent between 1.5 and 3.5 hours reviewing the Agreements with drivers. (*Id.* ¶¶ 6, 8.) Jedras also declares she always told drivers that agreeing to the ICOA was like buying a house, and that she encouraged the

drivers to review the agreements in a commensurate manner; if they seemed unsure, she would encourage them to go home and think about. (*Id.* ¶ 9.) Nevertheless, the Court resolves these factual conflicts in favor of Plaintiffs. *See Murphy*, 362 F.3d at 1138. ("If there are any factual disputes with respect to a forum selection clause, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.").

lection clauses, or that the clauses were fraudulently inserted after Plaintiffs had signed the agreements. Notably, Plaintiffs do not allege that any of Defendants' representatives ever told them not to read the Agreements, or prevented Plaintiffs from reading them. LaCross only declares that Defendants' recruiter "only showed [him] where to sign and initial" and that by doing so "essentially rushed" him. (LaCross Decl. ¶ 4.) Plaintiffs cite to no case law or authority to support the finding of undue influence or overreaching based on these factual allegations, or their allegations that LaCross was not given the opportunity for an attorney to examine the agreement.

Further, upon review of the ICOA and the TLA, this Court finds nothing unusual that would indicate undue influence or overreaching. The forum-selection clauses in both contracts are clearly marked; the clause in the ICOA appears under a bold and under-lined headline that states "Choice of Forum" (ICOA at 38), while the clause in the TLA appears in all capital letters (TLA at 11.) In other words, the clauses were clearly communicated in the Agreements, and the Court finds the forum selection clauses are not rendered unenforceable because of lack of notice.

Accordingly, the Court finds the forum-selection clauses here are not the products of overreaching.

### 2. Plaintiffs' Financial Difficulties

■ Plaintiffs' next argue that LaCross will be deprived of his day in court if the case is transferred to Arizona, as the increased costs will prevent him from continuing the case. (*Id.* at 57.) Plaintiffs present no evidence or argument as to either of Lira or Lofton's financial circumstances.

While sympathetic to LaCross's financial difficulties, the Court is not persuaded by Plaintiffs' arguments. As another district court has explained, a plaintiff's "financial ability to bear the costs and inconvenience of litigation in [another state]" are "factors that the Supreme Court in [the recently decided case] *Atlantic Marine* deemed 'private interests' that the Court may not consider." *Monastiero v. appMobi, Inc.,* 2014 WL 1991564, at \*5 (N.D.Cal. May 15, 2014) (citing *Atlantic Marine,* 134 S.Ct. at 582). Plaintiffs present no argument as to why considerations of his financial ability should be taken into account post *Atlantic Marine.* [3] By agreeing to the forum-selection clauses in the Agreements, Plaintiff has "waive[d] the right to challenge the preselected forum as inconvenient or less convenient." *Atlantic Marine,* 134 S.Ct. at 581.

### 3. Enforcing the Clauses Would Not Violate Public Policy

■ Finally, Plaintiffs contend that the forum-selection clauses—coupled with the Arizona choice-of-law clauses in the ICOA and TLA—would deny them their statutory rights under California law, and thus the Agreements violate California public policy. (Opp'n at 7–14.) The Court disagrees.

■ First, courts in the Ninth Circuit "have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy." *Rowen v. Soundview Commc'ns, Inc.,* 2015 WL 899294, at \*4 (N.D.Cal. Mar. 2, 2015) (internal citation omitted). Instead, "absent a total foreclosure of remedy in the transferee forum, courts tether their policy analysis to the forum selection clause itself, finding the forum selection clause

---

3. Moreover, the Court notes that there are two additional Plaintiffs—Lira and Lofton—who may represent the class at any proceedings in Arizona. Also, given the realities of class action litigation, it is unlikely that prosecuting the case will require LaCross to travel to Arizona as frequently as he avers.

unreasonable only when it contravenes a policy specifically related to venue." *Id.* (citations omitted); *see, e.g., Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 497–98 (9th Cir.2000) (finding a forum selection clause invalid because California law specifically provided that California franchisees were entitled to a California venue for franchise agreement suits). Thus, unless a plaintiff can demonstrate that her remedy is altogether foreclosed and unavailable in the transferee court, courts do not consider policy arguments unrelated to venue. *See Rowen,* 2015 WL 899294, at *4 (collecting cases); *see also Hegwer v. Am. Hearing & Assocs.,* 2012 WL 629145, at *3 (N.D.Cal. Feb. 27, 2012) (rejecting plaintiff's argument against transferring venue because plaintiff failed to identify a specific California policy and concluding that any such policy must be related to the forum selection clause itself given that no foreclosure of remedy would exist in the transferee forum).

Second, even if the Court considers the choice-of-law provisions in the Agreements, the Court is not persuaded that transfer of this case to the District Court

of Arizona will deprive Plaintiffs of their rights. Federal courts in other states are "fully capable of applying California law." *Foster v. Nationwide Mut. Ins. Co.,* 2007 WL 4410408, at *6 (N.D.Cal.2007); *see also Atlantic Marine,* 134 S.Ct. at 584 ("federal judges routinely apply the law of a State other than the State in which they sit."). The Court has no reason to suspect that the District Court of Arizona would have any trouble applying the California labor laws at issue in this case, if it deems such application appropriate.[4] *See Robles v. Comtrak Logistics, Inc.,* 2015 WL 1530510, at *6 (E.D.Cal. Apr. 3, 2015) (in a California wage-and-hour case involving truck drivers, concluding "If Plaintiff's allegations regarding Defendant's misclassification of him and others as independent contractors are proven true, the court in Tennessee will be "fully capable" of awarding him the remedies and withheld benefits provided for under California labor laws.) The same analysis applies to Plaintiffs' claims under California's Private Attorneys General Act ("PAGA"); the Court sees no reason why these claims should be treated any differently than Plaintiffs' California wage-and-hour claims.[5]

---

**4.** While there both the Agreements contain choice-of-law provisions, the provisions are more narrow than the forum-selection clauses. For example, the ICOA states that "this agreement shall be governed by the laws of the ... State of Arizona." (ICOA at 36.) This is in contrast to the broader language of the ICOA's forum-selection clause, which states "any legal proceedings ... relating to the relationship created by this Agreement ... shall be filed and/or maintained in Phoenix, Arizona." In other words, while Plaintiffs' misclassification claims "relate to" the ICOA (and thus trigger the forum-selection clause) they would likely not be governed by Arizona law, as only "the agreement" itself is governed by such law. As such, Plaintiffs' arguments concerning the differences in the labor laws of California and Arizona (Opp'n at 9–11) are largely irrelevant. Notably, Plaintiffs point to no authority for the proposition that they will not be able to bring their California

Labor Code or PAGA claims in the District Court of Arizona.

**5.** This analysis also applies to Plaintiffs' contention that the "public interest factor" involved in California adjudication of PAGA claims should defeat transfer. Plaintiffs do not explain why the District Court of Arizona could not fairly adjudicate their PAGA claims. Indeed, even the California Supreme Court recognizes PAGA claims can be brought in forums other than California state courts. *See Iskanian v. CLS Transportation,* 59 Cal.4th 348, 391–92, 173 Cal.Rptr.3d 289, 327 P.3d 129 (indicating representative PAGA claims can be arbitrated). The Court finds Plaintiffs have not carried their heavy burden to show that this is an unusual case that would warrant denial of the motion. *Atlantic Marine,* 134 S.Ct. at 582 (public interest factors "will rarely defeat" a motion to transfer and thus "forum-selection clauses should control except in unusual circumstances").

### 4. Disposition

In sum, Plaintiffs have not borne the "heavy burden" of showing the forum-selection clauses at issue to be unenforceable. *Doe 1 v. AOL LLC,* 552 F.3d 1077, 1083 (9th Cir.2009) ("[a] forum selection clause is presumptively valid; the party seeking to avoid a forum selection clause bears a 'heavy burden' to establish a ground upon which [the court] will conclude the clause is unenforceable.").

### B. The Forum–Selection Clauses Apply to Plaintiffs' Claims

■ "In diversity cases, federal law governs the analysis of the effect and scope of forum selection clauses." *Jones v. GNC Franchising, Inc.,* 211 F.3d 495, 497 (9th Cir.2000) (citing *Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509, 513 (9th Cir.1988)).

■ "The scope of the claims governed by a forum selection clause depends [upon] the language used in the clause." *Ronlake v. US–Reports, Inc.,* 2012 WL 393614, at *3–4 (E.D.Cal. Feb. 6, 2012). In analogous contexts, the Ninth Circuit has found that provisions using the phrases "arising under," "arising out of," and "arising hereunder" (collectively referred to as "arising under" language) should be narrowly construed to cover only those disputes "relating to the interpretation and performance of the contract itself." *Cape Flattery Ltd. v. Titan Mar., LLC,* 647 F.3d 914, 922 (9th Cir.2011); *see also Ronlake,* 2012 WL 393614, at *4. In contrast, provisions that include or add phrases such as "relating to" and "in connection with" (collectively referred to as "relating to" language) have a broader reach. *Cedars–Sinai Med. Ctr. v. Global Excel Mgmt., Inc.,* 2009 WL 7322253, at *5 (C.D.Cal. Dec. 30, 2009); *Cape Flattery,* 647 F.3d at 922; *Joseph v. Amazon.Com, Inc.,* 2013 WL 4806462, at *4 (N.D.Cal. Sept. 9, 2013).

■ Plaintiffs contend that their California Labor Code claims are not within the scope of the forum-selection clause. However, the ICOA covers "any legal proceedings between the parties ... *relating to* the relationship created by this Agreement." (ICOA at 38 (emphasis added).) This language has a broad reach that clearly encompasses the claims here. Plaintiffs allege they were misclassified as a result of the relationship they created by signing the ICOA; the misclassification thus clearly relates to the ICOA.[6] *See Robles* 2015 WL 1530510 (finding independent contractor agreement encompassed truck drivers' California labor law claims, explaining "[t]he Contract governs the working relationship between the parties. It is the precise nature of that relationship that is at issue in this matter. Therefore, Plaintiffs' claims fall within the scope of the forum selection clause.)

Accordingly, the Court finds that the forum-selection clause in the ICOA applies to Plaintiffs' claims.[7]

### IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Transfer

---

**6.** The Court also finds Plaintiffs' argument concerning their PAGA claims unpersuasive. While it is true that the Supreme Court has held that a governmental enforcement agency cannot be bound by an *arbitration agreement* it was not a party to, *see EEOC v. Waffle House, Inc.,* 534 U.S. 279, 294, 122 S.Ct. 754, 151 L.Ed.2d 755 (2002), a forum-selection clause is distinct; it does not remove Plaintiffs' PAGA claims from a judicial proceeding. It merely alters which specific district court will hear those claims. Moreover, Plaintiffs have presented no case law to support the proposition that a forum-selection clause cannot apply to a representative PAGA action.

**7.** As the Court finds the ICOA's forum-selection clause mandates transfer of the action, the Court need not examine the TLA's forum-selection clause.

Venue, and ORDERS this case TRANS-FERRED to the United States District Court, District of Arizona (Phoenix) for all further proceedings.[8]

**IT IS SO ORDERED.**

---

8. In a previous ruling (Doc. No. 59), the Court ordered that Defendants respond to Plaintiffs' Special Interrogatory # 1 by May 29, 2015. (Doc. No. 59 at 6.) The Court also ordered the parties to submit a stipulated protective order related to the same. (*Id.*) The previous order remains in effect, but the parties should submit the stipulated protective order to the District Court in Arizona. The parties may also address Plaintiffs' Motion for Corrective Action with the District Court in Arizona.