I. Introduction
Yan Guo ("Yan"[1] ) and Ju Jin Guo ("Ju Jin") (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, brought this action against Kyäni, Inc. ("Kyäni"), Michael Breshears ("Breshears") and Kirk Hansen ("Hansen") (collectively, "Defendants"). Dkt. 1. The claims arise out of Plaintiffs' role as distributors of certain health and wellness products. They contend that Defendants have established the distributorships as part of a "pyramid scheme," in which distributors are required to make certain payments and to recruit others to become distributors who are also obligated to make such payments.
On January 31, 2018, Defendants filed an Arbitration Demand with the American Arbitration Association ("AAA") in Idaho Falls, Idaho as to Yan. See Declaration of Lawrence B. Steinberg ("Steinberg Decl."), Dkt. 23-2 ¶ 2. The following day, Plaintiffs filed the First Amended Complaint ("FAC"). Dkt. 27. Thereafter, on February 12, 2018, Defendants filed a First Amended Arbitration Demand with the AAA as to Yan. See Ex. B to Declaration of C. Seth Ensign ("Ensign Decl."), Dkt. 39-3. The same day, Defendants also filed with the AAA an Arbitration Demand as to Ju Jin. See Ex. A to Ensign Decl., Dkt. 39-2.
On January 11, 2018, Kyäni and Breshears (collectively, the "Moving Defendants") filed a motion to dismiss on the grounds of forum non conveniens ("Forum Non Conveniens Motion"). Dkt. 17. Plaintiffs opposed the Forum Non Conveniens Motion (Dkt. 24),[2] and the Moving Defendants replied. Dkt. 32. On February 20, 2018, the Moving Defendants filed a motion to dismiss for failure to state a claim *1136 ("12(b)(6) Motion"). Dkt. 38. Plaintiffs opposed the 12(b)(6) Motion (Dkt. 53), and the Moving Defendants replied. Dkt. 57. The Moving Defendants also filed a motion to stay this action ("Motion to Stay"). Dkt. 39. Plaintiffs opposed the Motion to Stay (Dkt. 52), and the Moving Defendants replied. Dkt. 58. On March 30, 2018, Hansen filed a notice of joinder[3] in the Forum Non Conveniens Motion, the 12(b)(6) Motion and the Motion to Stay (collectively, the "Motions"). Dkt. 63.
On April 9, 2018, a hearing on the Motions was held and they were taken under submission. Dkt. 67. For the reasons stated in this Order, the Forum Non Conveniens Motion is DENIED , the 12(b)(6) Motion is GRANTED IN PART and DENIED IN PART , and the Motion to Stay is DENIED .
II. Factual Background
A. The Parties
Yan and Ju Jin are citizens of California. FAC ¶¶ 5-6.
Kyäni is an Idaho corporation. It is a network marketing company that distributes health and wellness products through a network of independent contractor distributors ("Distributors"). Declaration of Kristen Pearson ("Pearson Decl."), Dkt. 17-1 ¶ 3. The FAC alleges that Breshears and Hansen founded Kyäni in 2005. FAC ¶ 21. It alleges that Breshears is the Chief Executive Officer of Kyäni and that Hansen is Kyäni's Founder and Chairman. Id. ¶¶ 8-9. Breshears and Hansen are alleged to be "at the top of Kyäni's pyramid" because they are in the "top 1% of Distributors who make the most lucrative bonuses." Id. ¶¶ 87-88. The FAC alleges that Breshears and Hansen have profited from Kyäni's compensation plan "at the expense of the vast majority of" Distributors. Id.
B. Allegations in the FAC
The FAC alleges that to become a Distributor, an individual must pay Kyäni between $600 and $1299. FAC ¶ 23. It alleges that Yan became a Distributor on or about June 2016 by paying Kyäni approximately $1500. Id. ¶ 94. It alleges that Ju Jin became a Distributor in 2015 by paying Kyäni the same sum. Id. ¶ 96; see also Supplemental Declaration of Kristen Pearson ("Pearson Supp. Decl."), Dkt. 32-1 ¶ 5.
The FAC alleges that Distributors earn certain bonuses by "recruiting people through a pay gate accumulator." FAC ¶ 32. It alleges that Defendants' "marketing plan ... systematically rewards recruiting Distributors over the sale of products." Id. ¶ 1. It alleges that Kyäni instructs Distributors to recruit new distributors through "private business receptions" and "massive 3-way calls." Id. ¶¶ 49, 56. A "private business reception" involves a Distributor hosting an event at his or her personal residence for recruits. Id. ¶ 50. The FAC alleges that Kyäni represents to Distributors that if they make 3-way calls every day, they "will be a diamond." Id. ¶ 57. It alleges that pursuant to Kyäni's compensation plan, Distributors "gain[ ] a rank" only for their recruitment efforts. Id. ¶ 69.
The FAC alleges that Distributors cannot successfully sell Kyäni's health and wellness products because they are priced so high, are available from other distributors at lower prices, and sales through numerous online retailers and brick-and-mortar stores are prohibited by Kyäni. Id.
*1137 ¶¶ 70, 81, 83. It also alleges that Kyäni has made certain misrepresentations regarding the quality of its products. Id. ¶¶ 73-76.
The FAC alleges that Defendants operate an "illegal pyramid scheme." Id. ¶ 3. It alleges that Kyäni's representatives, "including the executive team that authorized solicitation, marketing, and training materials," such as Bresehars and Hansen, made certain misrepresentations to Plaintiffs that imply that being a Distributor is profitable. Id. ¶¶ 20-80. It alleges, for example, that Kyäni represents that Distributors' cash flow will grow in "size and stability" and that "one can build strong... business ownership for a lifetime" as a Kyäni distributor. Id. ¶ 67.
C. The Proposed Class
Plaintiffs seek to represent a nationwide class of: "persons who paid start-up fees, monthly fees, annual fees, seminar ticket fees, any other fees imposed by Kyäni, and/or purchased products from Kyäni between January 1, 2011, to the present date, who lost money from their participation in the Kyäni scheme." FAC ¶ 103. Plaintiffs also seek to certify two subclasses. Id. ¶¶ 105-06.
D. The Causes of Action in the FAC
The FAC advances ten causes of action against Defendants: (i) declaratory relief; (ii) operation of an endless chain scheme, Cal. Pen. Code § 327, Cal Civ. Code § 1689.2 ; (iii) unfair and deceptive business practices, Cal. Bus. & Prof. Code §§ 17200 et seq. ; (iv) false advertising, Cal. Bus. & Prof. Code §§ 17500 et seq. ; (v) fraudulent concealment and nondisclosure; (vi-vii) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(5), 1962(c) ; (viii) federal securities fraud; (ix) unjust enrichment and (x) violations of the California Seller Assisted Marketing Plan Act ("CSAMPA"), Cal. Civ. Code §§ 1812.200 et seq.
E. Evidence Submitted by Defendants in Support of the Forum Non Conveniens Motion
1. Declaration Prepared by Kyäni's Global Compliance Director
Defendants submitted a declaration prepared by Kristen Pearson ("Pearson"), Kyäni's Global Compliance Director, in support of the Forum Non Conveniens Motion. Pearson Decl., Dkt. 17-1. Pearson declares that to become a Distributor, a person must submit an online application through Kyäni's website. Id. ¶ 5. As part of the application process, prospective distributors are required to consent to three separate agreements-the Electronic Consent Agreement, Kyäni's Policies & Procedures and Kyäni's Independent Distributor Agreement Terms & Conditions (collectively, "the Agreements"). Id. ¶¶ 6, 9, 11. Prospective distributors may review the Agreements on Kyäni's website or download copies of them in PDF form during the application process. Id. ¶¶ 12, 14. An applicant cannot become a Distributor unless that person checks three boxes on Kyäni's website confirming agreement to the terms and conditions presented in each of the Agreements. Id. ¶¶ 13, 15. Pearson declares that Yan and Ju Jin could have become Distributors only after going through these steps. Pearson Supp. Decl., Dkt. 32-1 ¶ 18.
Defendants submitted a supplemental declaration prepared by Pearson with their reply brief. Pearson Supp. Decl., Dkt. 32-1. The supplemental declaration includes certain information concerning Ju Jin, apparently because Ju Jin was added as a party after the Forum Non Conveniens Motion was filed. Pearson declares that a person by the name of "Ju Jin" applied to be and became a Kyäni distributor on December 30, 2015. Id. ¶ 17. Although the application submitted by "Ju Jin" did not include the last name "Guo," it appears *1138 that "Ju Jin" is the same Ju Jin as the Plaintiff in this action. Id. ¶ 19.
2. The Kyäni Independent Distributor Agreement Terms & Conditions
The Kyäni Independent Distributor Agreement Terms & Conditions ("Independent Distributor Agreement") governs the relationship between Kyäni and Distributors. See Ex. A to Pearson Decl., Dkt. 17-1 at 4 (Independent Distributor Agreement). The Independent Distributor Agreement states, in relevant part:
[t]he Distributor Agreement between the Distributor and Kyäni has been entered into in Idaho Falls, Idaho, United States of America, as this is the location where the Distributor submitted the application to enroll as a Kyäni Independent Distributor, and where the application was reviewed and approved by Kyäni. The Distributor Agreement shall be governed exclusively by the laws of the State of Idaho, and the Distributor agrees to submit exclusively to the jurisdiction of the courts of the State of Idaho, and specifically the District Court of the Seventh Judicial District with venue in Bonneville County, for resolution of any claims or related litigation to interpret or enforce the terms of the Distributor Agreement.
Id. § 12. The Independent Distributor Agreement states that Kyäni's Policies & Procedures, as well as the Global Compensation Plan, are "incorporated into and made part of" the Independent Distributor Agreement. Id. § 4.
The Independent Distributor Agreement also contains an arbitration provision. It provides, in relevant part:
[e]xcept as set forth in the Kyäni Policies and Procedures, or unless the laws of the state in which I reside expressly prohibit the consensual jurisdiction and venue provisions of this Agreement, in which case its laws shall govern, all disputes and claims relating to Kyäni, the Distributor Agreement, the Kyäni Global Compensation Plan or its products, the rights and obligations of an independent Distributor and Kyäni, or any other claims or causes of action relating to the performance of either an independent Distributor or Kyäni under the Agreement or the Kyäni Policies and Procedures shall be settled totally and finally by binding arbitration in Idaho Falls, Idaho or such other location as Kyäni prescribes, in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association.
Id. § 12.
III. Analysis
A. Forum Non Conveniens Motion
1. Legal Standards: 28 U.S.C. § 1404(a) -Forum non Conveniens
"[T]he appropriate way to enforce a forum-selection clause pointing to a state ... forum is through the doctrine of forum non conveniens ." Atlantic Marine Constr. Co. v. U.S. Dist. Court for the W. Dist. of Tex. (Atlantic Marine ), 571 U.S. 49, 134 S.Ct. 568, 580, 187 L.Ed.2d 487 (2013). Under that doctrine, a district court "has discretion to decline to exercise jurisdiction in a case where litigation in a foreign forum would be more convenient for the parties." Lueck v. Sundstrand Corp. , 236 F.3d 1137, 1142 (9th Cir. 2001). "A party moving to dismiss based on forum non conveniens bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." Dole Food Co., Inc. v. Watts , 303 F.3d 1104, 1118 (9th Cir. 2002) (citing Lueck , 236 F.3d at 1142-43 ).
Ordinarily, when evaluating a motion to dismiss on grounds of forum non conveniens, "a plaintiff's choice of forum *1139 will not be disturbed unless the 'private interest' and the 'public interest' factors strongly favor trial" in a foreign jurisdiction. Lueck , 236 F.3d at 1145 (quoting Gulf Oil Corp. v. Gilbert , 330 U.S. 501, 509, 67 S.Ct. 839, 91 L.Ed. 1055 (1947) ). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.' " Atlantic Marine , 134 S.Ct. at 581 (quoting Stewart Organization, Inc. v. Ricoh Corp. , 487 U.S. 22, 31, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) ). If an enforceable forum selection clause applies, the burden shifts to the plaintiff to show that the public-interest factors "overwhelmingly disfavor" dismissal. Id. at 583.
The presence of a forum selection clause is "a significant factor that figures centrally in the ... calculus," but is not always dispositive. Stewart Organization, Inc. , 487 U.S. 22 at 29, 108 S.Ct. 2239, 101 L.Ed.2d 22. Thus, when a dispute is governed by a valid forum selection clause, the clause should be "given controlling weight in all but the most exceptional cases." Atlantic Marine , 134 S.Ct. at 581 (citation omitted).
2. Application
a) Whether the Forum Selection Clause Applies to the Claims Advanced in the FAC
(1) Legal Standards
"[F]orum selection clauses can be equally applicable to contractual and tort causes of action." Manetti-Farrow, Inc. v. Gucci Am., Inc. , 858 F.2d 509, 514 (9th Cir. 1988). "Statutory claims can also be subject to forum selection clauses." Perry v. AT&T Mobility LLC , No. C 11-01488 SI, 2011 WL 4080625, at *3 (N.D. Cal. Sept. 12, 2011). In a diversity suit, federal law applies to the interpretation of a forum selection clause "because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced." Manetti-Farrow , 858 F.2d at 513.
Whether a forum selection clause applies to non-contractual claims "depends on whether resolution of the claims relates to interpretation of the contract" that contains the forum selection clause. Id. at 514. The outcome depends on the breadth of the language used in the forum selection clause. LaCross v. Knight Transp., Inc. , 95 F.Supp.3d 1199, 1207 (C.D. Cal. 2015). Where, for example, the clause governs claims "arising under" the particular agreement that contains the forum selection clause, it "should be interpreted narrowly," i.e. , as applying only to those disputes "relating to the interpretation and performance of the contract itself." Cape Flattery Ltd. v. Titan Maritime, LLC , 647 F.3d 914, 922 (9th Cir. 2011) (quoting Mediterranean Enters., Inc. v. Ssangyong Corp. , 708 F.2d 1458, 1464 (9th Cir. 1983) ); see also Rey v. Rey , 666 Fed. Appx 675, 676 (9th Cir. 2016) (a forum selection clause that applies to disputes "stemming from" an agreement is comparable to "arising under" and is "narrow in its scope"). By contrast, a clause that provides that all disputes "arising out of or relating to" or "in connection with" an agreement shall be adjudicated in a specified forum is broader. Cape Flattery , 647 F.3d 914 at 922 ; LaCross , 95 F.Supp.3d at 1207.
In Manetti-Farrow , the Ninth Circuit considered whether a clause designating Florence, Italy as the exclusive forum for resolution of any controversy "regarding [the] 'interpretation' or 'fulfillment' " of the parties' contract applied to the plaintiff's claims of tortious interference with prospective economic advantage and tortious interference with contractual relations. 858 F.2d at 514. There, the plaintiff entered into an exclusive agreement to distribute the defendant's products in the United *1140 States. Id. at 511. When the defendant terminated that agreement, the plaintiff filed an action in the Northern District of California. Id. The Ninth Circuit concluded that the forum selection clause barred the plaintiff's action because each of its non-contractual claims "relate[d] in some way to the rights and duties enumerated" in the contract and could not "be adjudicated without analyzing whether the parties were in compliance with the contract." Id.
There was a similar outcome in Modius, Inc. v. Psinaptic, Inc. , No. C 06-02074 SI, 2006 WL 1156390, at *7 (N.D. Cal. May 2, 2006). The forum selection clause at issue, which designated the "Court of Queen's Bench" in Alberta, Canada as the forum with exclusive jurisdiction "over disputes under this Agreement," applied to the plaintiff's non-contractual claims. 2006 WL 1156390, at *7 (N.D. Cal. May 2, 2006). The forum selection clause was in a reseller agreement that gave the plaintiff a non-exclusive license to distribute the defendant's software. Id. at *1. During the negotiations prior to the execution of that agreement, the defendant's Chief Executive Officer confirmed that it would escrow the defendant's software's source code to a third party as requested by the plaintiff's President. Id. A provision in the executed reseller agreement confirmed this obligation, i.e. , it expressly required that the defendant place the source code in escrow pursuant to an Escrow Agreement that was to be attached to the reseller agreement. Id. The defendant ultimately refused to execute the Escrow Agreement. Id. at *2. The plaintiff terminated the reseller agreement and commenced an action in a California Superior Court. Id. It advanced numerous non-contractual claims, including that defendant intentionally or negligently misrepresented whether it would escrow the source code to induce the plaintiff into the reseller agreement. Id. at *7. Modius, Inc. concluded that these causes of action "relate[d]" to the reseller agreement because the "factfinder necessarily needs to examine and interpret [that agreement] for evidence of what the parties intended their rights and duties under the ... Escrow Agreement to be." Id.
The outcome was different in In re Orange, S.A. , 818 F.3d 956 (9th Cir. 2016). There, the plaintiff's non-contractual claims were not subject to the forum selection clause in the parties' non-disclosure agreement ("NDA"). The defendant, a telecommunications provider, approached the plaintiff, a technology company and developer of software applications, about acquiring a particular application. Id. at 959. The parties executed an NDA, which barred the disclosure of any "confidential information" exchanged during the negotiations regarding the application to any third party. Id. The NDA included a forum selection clause that provided that "[a]ny and all dispute, controversy, claim or question arising out of or relating to the Agreement" shall be resolved in "the Court of Paris (France)." Id. Defendant terminated negotiations with the plaintiff. Thereafter, the plaintiff filed a complaint in the Northern District of California alleging that the defendant improperly accessed the plaintiff's computer servers to access proprietary information about the software and used fictitious names to access the application. Id. at 960. The complaint asserted causes of action for violation of the Computer Fraud and Abuse Act ("CFAA"), breach of the plaintiff's "Terms of Use," breach of the covenant of good faith and fair dealing, theft of trade secrets and unfair competition. Id. The defendant moved to dismiss, arguing that these claims fell within the scope of the forum selection clause. The Ninth Circuit disagreed, and adopted the conclusion of the district court that
the claims were so factually distinct from the NDA that the forum selection clause could not apply. Telesocial's *1141 CFAA, theft of trade secrets, and unfair competition claims are predicated on Orange's using fictitious names to use Telesocial's app and hacking into Telesocial's servers after Orange ceased the "discussions" at the center of the NDA. Telesocial's contract claims, moreover, stem from a breach of Telesocial's "Terms of Use" agreement. Nothing in the claims required the district court to interpret, let alone reference, the NDA to issue a ruling on Telesocial's claims.
Id. at 962.
(2) Application
Defendants argue that the mandatory forum selection clause that requires that any suit "to interpret or enforce the terms of the Independent Distributor Agreement" be filed in a state court in Idaho applies to Plaintiffs' claims. Thus, they contend that the FAC challenges the lawfulness and enforceability of various aspects of that agreement. Plaintiffs disagree. They argue that the forum selection clause does not apply to the claims advanced in the FAC because they do not concern the interpretation or enforcement of the Independent Distributor Agreement.
As noted, the relevant forum selection clause provides that the
Distributor agrees to submit exclusively to the jurisdiction of the courts of the State of Idaho, and specifically the District Court of the Seventh Judicial District with venue in Bonneville County, for resolution of any claims or related litigation to interpret or enforce the terms of the [Independent] Distributor Agreement.
Independent Distributor Agreement § 12.
This language shows that the forum selection clause applies to claims concerning the "interpret[ation] or enforce[ment]" of the Independent Distributor Agreement. It is similar to the clause that was at issue in Manetti-Farrow . 858 F.2d at 514 (forum selection clause applied to any controversy regarding the "interpretation or fulfillment" of the parties' distribution agreement). However, unlike the claims advanced in Manetti-Farrow, those alleged in the FAC can be "adjudicated without analyzing whether the parties were in compliance" with the Independent Distributor Agreement. Id.
As noted, the FAC advances several causes of action against Defendants arising out of their alleged operation of an "illegal pyramid scheme." They include: operation of an "endless chain scheme;" unfair and deceptive business practices; false advertising; violation of the California Seller Assisted Marketing Plan Act; fraudulent concealment/nondisclosure; unjust enrichment; federal securities fraud and violations of RICO. None of these causes of action relates to the "rights and duties enumerated" in the Independent Distributor Agreement. Manetti-Farrow, 858 F.2d at 514. Instead, these claims arise out of alleged conduct outside of what occurred and was contemplated by that agreement, i.e. , Kyäni's alleged fraudulent business practices, including the alleged deceptive misrepresentations it made to prospective distributors. Consequently, they are not within the scope of the forum selection clause that is the basis for the Forum Non Conveniens Motion.[4] See *1142 Hardy v. Advocare Int'l, L.P. , No. 2:09-cv-01307-JHN-PJWx, 2010 WL 11509179, at *5 (C.D. Cal. Dec. 10, 2010) (a distributor of nutritional supplements and weight-loss products sold by the defendant, was not required to litigate intentional and negligent misrepresentation claims in the forum designated in the parties' Distributor Agreement because resolution of those claims would not "require interpretation" of that agreement, in part because "the representations identified in the Complaint are alleged to have been made ... through websites, representatives, signs, advertising, and labeling").
The cases on which Defendants rely to support the position that the forum selection clause encompasses Plaintiffs' fraud-based claims are distinguishable. In Cung Le v. Zuffa, LLC , a forum selection clause that designated the federal courts in Clark County, Nevada as the exclusive jurisdiction "for any action brought ... to interpret or enforce any provision" of the parties' contracts was found to encompass the Plaintiffs' antitrust claims. 108 F.Supp.3d 768, 775 (N.D. Cal. 2015). There, the action was brought "to interpret" the relevant contracts because the plaintiffs challenged several specific terms as "restrictive" or "anticompetitive" and the parties offered competing interpretations about their meaning. Id. at 776 ; see also Zako v. Hamilton Co. , No. 5:15-cv-03162-EJD, 2016 WL 344883, at *2 (N.D. Cal. Jan. 28, 2016) (FLSA claim advanced was within the scope of a forum selection clause in an employee's severance agreement, providing that an action "seeking to enforce any provision of this Agreement" shall be brought in the designated forum because the claim was "related to" the Agreement or "raise[d] issues that require analysis thereof"). The claims advanced in the FAC, unlike those made in Cung Le , do not require the resolution of disputes regarding the interpretation of specific provisions in the Independent Distributor Agreement.[5] The claims are also different *1143 than those advanced in Zako where the FLSA claim was related to the broad release of employment-based claims in the severance agreement. Unlike the claims here, the FLSA claim was one that the parties in Zako could have anticipated when they entered the severance agreement.
For the foregoing reasons, the Forum Non Conveniens Motion is DENIED .[6]
67">B. 12(b)(6) Motion
1. Legal Standards- Fed. R. Civ. P. 12(b)(6)
Fed. R. Civ. P. 8(a) provides that a "pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." The complaint must state facts sufficient to show that a claim for relief is plausible on its face. Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint need not include detailed factual allegations, but must provide more than a "formulaic recitation of the elements of a cause of action." Id. at 555, 127 S.Ct. 1955. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal citations omitted).
Pursuant to Fed. R. Civ. P. 12(b)(6), a party may move to dismiss for failure to *1144 state a claim. It is appropriate to grant such a motion only where the complaint lacks a cognizable legal theory or sufficient facts to support one. Mendiondo v. Centinela Hosp. Med. Ctr. , 521 F.3d 1097, 1104 (9th Cir. 2008). In considering a motion to dismiss, the allegations in the challenged complaint are deemed true and must be construed in the light most favorable to the non-moving party. Cahill v. Liberty Mut. Ins. Co. , 80 F.3d 336, 337-38 (9th Cir. 1996). However, a court need not "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig. , 536 F.3d 1049, 1055 (9th Cir. 2008) (citing Sprewell v. Golden State Warriors , 266 F.3d 979, 988 (9th Cir. 2001) ).
2. Application
a) Second Cause of Action: Endless Chain Scheme, of Cal. Pen. Code § 327, Cal Civ. Code § 1689.2 ; Third Cause of Action: California's Unfair & Deceptive Business Practices, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); Fourth Cause of Action: False Advertising, Cal. Bus. & Prof. Code §§ 17500 et seq. and Tenth Cause of Action: The California Seller Assisted Marketing Plan Act ("CSAMPA"), Cal. Civ. Code §§ 1812.200 et seq.
(1) Positions of the Parties
Defendants contend that the second, third, fourth and tenth causes of action should be dismissed because the Independent Distributor Agreement provides that Idaho law applies to its terms. Because each of these causes of action is asserted under California law, Defendants argue that they must be dismissed.
(2) Legal Standards
"A federal court sitting in diversity must look to the forum state's choice of law rules to determine the controlling substantive law." Zinser v. Accufix Research Inst., Inc. , 253 F.3d 1180, 1187 (9th Cir. 2001). The California Supreme Court has addressed this issue:
California has two different analyses for selecting which law should be applied in an action. When the parties have an agreement that another jurisdiction's law will govern their disputes, the appropriate analysis for the trial court to undertake is set forth in Nedlloyd [Lines B.V. v. Superior Court , 3 Cal. 4th 459, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (Cal. 1992) (en banc) ] ... which addresses the enforceability of contractual choice-of-law provisions.
Wash. Mut. Bank, FA v. Sup. Ct. , 24 Cal. 4th 906, 914-15, 103 Cal.Rptr.2d 320, 15 P.3d 1071 (2001).
Under Nedlloyd , "the trial court should first examine the choice-of-law clause and ascertain whether the advocate of the clause has met its burden of establishing that" the claims advanced in the action "fall within its scope." Id. at 916, 103 Cal.Rptr.2d 320, 15 P.3d 1071. To determine the scope of the identified choice of law provision, courts look to the law of the forum identified in the agreement. See id. at n.3 ("[T]he scope of a choice-of-law clause in a contract is a matter that ordinarily should be determined under the law designated therein ....") (citing Nedlloyd , 3 Cal. 4th at n.7, 11 Cal.Rptr.2d 330, 834 P.2d 1148 ); see also Batchelder v. Kawamoto , 147 F.3d 915, 918 n.2 (9th Cir. 1998) ; JMP Sec. LLP v. Altair Nanotechnologies Inc. , 880 F.Supp.2d 1029, 1036 (N.D. Cal. 2012) ("The scope of a contract's choice-of-law clause is determined by the body of *1145 law identified in the agreement, unless the agreement specifies a different scope.").
As noted, the Independent Distributor Agreement states that Idaho law applies. The Idaho Supreme Court has provided some guidance regarding the determination of the scope of choice of law provisions. In Ward v. Puregro Co. , it cited with approval the Restatement of Conflict of Laws, i.e. , that "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue." 128 Idaho 366, 913 P.2d 582, 584-85 (1996).[7] The Idaho Supreme Court has offered more detailed rulings on the scope of an arbitration clause. "Whether an arbitration clause in a contract requires arbitration of a particular dispute or claim depends upon its terms.... The meaning of an unambiguous contract and the intent of the parties must be determined from the plain meaning of the words used." Lovey v. Regence BlueShield of Id. , 72 P.3d 877, 886 (Idaho 2003). Lovey concluded that tort claims may fall within the scope of an arbitration clause because the issue is not "the characterization of the claim as tort or contract, but ... the relationship of the claim to the subject matter of the arbitration clause." Id. ; see id. at 888 (plaintiff's bad faith claim fell within the scope of the arbitration clause in her insurance policy because "[e]stablishing that claim w[ould] require reference to or construction of some portion of the policy itself").
(3) Application
The choice of law language in the Independent Distributor Agreement provides that the "Distributor Agreement shall be governed exclusively by the laws of the State of Idaho." The most apparent interpretation of this language is that the term applies only to the interpretation and construction of the Independent Distributor Agreement. This conclusion is consistent with the views of other courts. See, e.g. , Dollar Sys., Inc. v. Avcar Leasing Sys., Inc. , 890 F.2d 165, 171 (9th Cir. 1989) (choice of law provision in franchise agreement that provided that "this agreement shall be construed in accordance with the laws of the state of the Licensee's Operating Locality" only governed, by its express terms, the "construction or interpretation of the franchise agreement itself"); Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc. , 94 F.Supp.2d 589, 593 (E.D. Pa. 1999) (choice of law provision that provided that the relevant contract "shall be governed by the laws of the State of Delaware" encompassed only those claims "relating to the construction and interpretation" of that agreement and therefore excluded claims arising out of "tortious conduct that led up to the execution of the contract or to other actions arising out of the[ parties'] relationship");
*1146 Baxter v. Fairfield Fin. Servs., Inc. , 307 Ga.App. 286, 704 S.E.2d 423, 428 (2010) (choice of law provision that provided that a contract "shall be governed by the laws of Florida" applied only to enforcing "contractual duties").
The second, third, fourth and tenth causes of action do not concern the interpretation and construction of the Independent Distributor Agreement. Moreover, disputes as to the conduct at issue in this action-Defendants' alleged operation of an alleged pyramid scheme-is not what would ordinarily be "resolved by an explicit provision" in the Independent Distributor Agreement. Ward , 913 P.2d at 585. Accordingly, the Idaho choice of law provision in the Independent Distributor Agreement does not bar the statutory claims Plaintiffs advance under California law.
For the foregoing reasons, the 12(b)(6) Motion is DENIED to the extent it seeks dismissal of the second, third, fifth and tenth cause of actions because they are asserted under California law.[8]
a) Second Cause of Action: Endless Chain Scheme, of Cal. Pen. Code § 327, Cal Civ. Code § 1689.2 ; Third Cause of Action: California's Unfair & Deceptive Business Practices, Cal. Bus. & Prof. Code §§ 17200 et seq. ("UCL"); Fourth Cause of Action: False Advertising, Cal. Bus. & Prof. Code §§ 17500 et seq. and Fifth Cause of Action: Fraudulent Concealment and Nondisclosure
(1) Positions of the Parties
Defendants contend that the second, third, fourth and fifth causes of action are subject to the heightened pleading standard of Fed. R. Civ. P. 9(b). The premise is that each of these claims is "grounded in fraud." Defendants contend that none satisfies Rule 9(b), because none identifies the "who, what, when, where and how" of the alleged fraudulent misconduct. The second cause of action arises under Cal. Civ. Code § 1689.2, which prohibits "endless chain" marketing schemes. The third cause of action for fraudulent business practices arises under Cal. Bus. & Prof. Code §§ 17200 et seq. The fourth cause of action *1147 alleges false advertising in violation of Cal. Bus. & Prof. Code §§ 17500 et seq. , and the fifth cause of action is for fraudulent concealment and nondisclosure.
Plaintiffs make several responses. First , the second cause of action is not subject to Rule 9(b) because "the elements of" an endless chain scheme "do not include any mens rea or intent requirement." Plaintiffs argue in the alternative that even if this claim were subject to Rule 9(b), it is adequately pleaded. Second , the third, fourth and fifth causes of action are plausibly pleaded. In making this latter argument, Plaintiffs do not specifically address whether they dispute the application of Rule 9(b).
(2) Legal Standards
Cal. Civ. Code § 1689.2 provides, in relevant part:
A participant in an endless chain scheme, as defined in Section 327 of the Penal Code, may rescind the contract upon which the scheme is based, and may recover all consideration paid pursuant to the scheme, less any amounts paid or consideration provided to the participant pursuant to the scheme. In addition, the court may, upon motion, award reasonable attorney's fees to a prevailing plaintiff.
Cal. Penal Code § 327 defines an "endless chain" as
any scheme for the disposal or distribution of property whereby a participant pays a valuable consideration for the chance to receive compensation for introducing one or more additional persons into participation in the scheme or for the chance to receive compensation when a person introduced by the participant introduces a new participant. Compensation, as used in this section, does not mean or include payment based upon sales made to persons who are not participants in the scheme and who are not purchasing in order to participate in the scheme.
Rule 9(b)"applies to 'averments of fraud' in all civil cases in federal district court." Vess v. Ciba-Geigy Corp. USA , 317 F.3d 1097, 1103 (9th Cir. 2003). It also applies to "particular averments of fraud" in cases in which fraud is "not an essential element of the claim." Id. When Rule 9(b) applies, a party advancing the claim must state its bases with "particularity." Thus, the factual allegations must be "specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Id. at 1106 (ellipses, quotations, and citation omitted).
(3) Application
Rule 9(b) applies to the four challenged causes of action, which are premised on Defendants' alleged operation of an endless chain scheme.[9] Thus, the FAC frequently characterizes the alleged chain scheme as "fraudulent." See, e.g. , FAC ¶¶ 4, 150-151, 156, 168. It also *1148 characterizes as "fraudulent" the alleged misrepresentations Defendants made in their advertising campaigns and in direct communications with prospective distributors. Id. ¶¶ 147, 169-170. The fourth cause of action is expressly predicated on the fraudulent prong of the UCL. See id. ¶ 148 ("The named Plaintiffs have standing to bring these § 17200 claims under the fraudulent prong ...."). And, the fifth cause of action for fraudulent concealment and nondisclosure is plainly subject to Rule 9(b).
The FAC adequately alleges an endless chain scheme. The definition of an "endless chain" marketing scheme under Cal. Penal Code § 327 is "equivalent, if not identical to the Koscot test." Koscot Interplanetary, Inc. , 86 F.T.C. 1106, 1181 (1979), aff'd mem. sub nom. , Turner v. F.T.C. , 580 F.2d 701 (D.C. Cir. 1978). That test provides that pyramid schemes are "characterized by the payment by participants of money to the company in return for which they receive (1) the right to sell a product and (2) the right to receive in return for recruiting other participants into the program rewards which are unrelated to sale of the product to ultimate users." See Webster v. Omnitrition Intern., Inc. , 79 F.3d 776, 781 (9th Cir. 1996) (quoting In re Koscot ). The FAC alleges that to become a Distributor, a person is required to pay Kyäni between $600 and $1299. It alleges that Kyäni has a hierarchy of nine levels of distributors, and that the only way for a new Distributor to move up to higher ranks within the hierarchy is by recruiting other, new distributors. The FAC also alleges that "nearly all" Distributors "lose money" because Kyäni's products are priced so high. Id. ¶¶ 70, 85; see also id. ¶ 2. These allegations are sufficient under Koscot .Cf. Miron v. Herbalife Intern., Inc. , 11 Fed. Appx. 927, 929-30 (9th Cir. 2001) (complaint failed to state fraud, misrepresentation, UCL and false advertising claims against the defendant, Herbalife, based on its alleged operation of a "pyramid scheme" because it failed "to explain why Herbalife's system is a 'pyramid scheme,' or why it is inherently fraudulent").
For these reasons, the UCL and false advertising claims are plausibly pleaded. See Webster , 79 F.3d at 788 ("[t]he operation and promotion of an Endless Chain scheme within the meaning of Penal Code § 327 is an inherently deceptive marketing practice, actionable under § 17500," which prohibits false or deceptive advertising practices); see also id. (an endless chain marketing scheme that violates Penal Code § 327 is actionable under the UCL).[10] The FAC also includes specific factual allegations in support of Plaintiffs'
*1149 fraudulent concealment and nondisclosure claim.[11] These allegations are sufficiently specific to give Defendants "notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." Vess , 317 F.3d at 1106 (ellipses and citation omitted).
For the foregoing reasons, the 12(b)(6) Motion is DENIED as to the second, third, fourth and fifth causes of action, each of which satisfies the heightened pleading standard of Rule 9(b).
b) Sixth and Seventh Causes of Action: Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961(5), 1962(c)
(1) Positions of the Parties
Defendants contend that the sixth and seventh causes of action, which arise under RICO, should be dismissed on several grounds. These include that RICO claims cannot be based on alleged securities fraud. In response, Plaintiffs argue that the payments they made to Kyäni to become Distributors are not "securities."
(2) Legal Standards
RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "To prevail on a civil RICO claim [under § 1962(c) ], a plaintiff must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must establish that (5) the defendant caused injury to plaintiff's business or property." Chaset v. Fleer/Skybox Intern., LP, 300 F.3d 1083, 1086 (9th Cir. 2002).
A plaintiff may not "rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of [RICO]." Powers v. Wells Fargo Bank NA , 439 F.3d 1043, 1044 (9th Cir. 2006) (alteration in original) (quoting 18 U.S.C. § 1964(c) ). S.E.C. v. Glenn W. Turner Enterprises, Inc. , held that investments in a pyramid scheme can be "investment contracts" and therefore " 'securities' within the meaning of the federal securities laws." 474 F.2d 476, 477 (9th Cir. 1973). This conclusion was based on the view that an investment contract "is a transaction in which 'the scheme involves an investment of money in a common enterprise with profits to come solely from the efforts of others.' " Webster , 79 F.3d at 784 (quoting Glenn , 474 F.2d at 481 ).
The Ninth Circuit has declined to interpret the "solely from the efforts of others" requirement strictly. Instead, whether a payment made to an alleged pyramid scheme is an investment contract depends on whether "the efforts made by those other than the investor are the undeniably significant ones." Id. (quoting Glenn , 474 F.2d at 482 ). In making this evaluation, courts consider whether the promoters of the alleged scheme "control[ ] the methods by which the product [is] sold *1150 and new members [are] recruited." Id. In Webster , the payments the plaintiffs made to an alleged pyramid scheme were "investment contracts" that were securities because "[b]y the very structure of a pyramid scheme, participants' efforts are focused not on selling products but on recruiting others to join the scheme." 79 F.3d at 784.
(3) Application
The FAC alleges that Defendants have perpetrated "an unlawful pyramid scheme" in violation of RICO. FAC ¶ 190. Plaintiffs' RICO claims are expressly based on Defendants' alleged operation of a pyramid scheme. The FAC also alleges that the payments Plaintiffs made were "investment contracts" as defined by the federal securities laws. Thus, the FAC pleads that those at the top of the alleged hierarchy were in control of the channels through which Kyäni's products could be sold, as well as the manner in which Distributors were recruited. The FAC also alleges that Distributors can only rise in the ranks of the hierarchy through their recruitment efforts. In light of these allegations, Plaintiffs RICO claims are barred as a matter of law. That Plaintiffs may have exerted "some effort" to sell Kyäni's products does not change this outcome. See Webster , 79 F.3d at 784 (rejecting the plaintiffs' argument that their payments were not investment contracts because they were required to exert "some effort").[12] This conclusion is reinforced by the decisions of other district courts in this Circuit. See, e.g. , Martinez , 2016 WL 951430, at *8 ("[I]nvestments in pyramid schemes are securities as a result of the nature of pyramid schemes, rather than the specifics of any agreements. As a consequence, the PSLRA is the correct vehicle for a challenge based on the operation of a pyramid scheme rather than RICO."); Li v. EFT Holdings, Inc. , No. CV 13-8832 DSF (CWX), 2015 WL 12747812, at *1 (C.D. Cal. July 21, 2015) (dismissing the plaintiff's RICO claim because "allegations that one was victimized by a pyramid scheme may be brought as securities fraud claims and cannot be brought as RICO claims").
For the foregoing reasons, the 12(b)(6) Motion is GRANTED as to the sixth and seventh causes of action, and they are DISMISSED without prejudice, but without leave to amend.[13]
c) Eighth Cause of Action: Federal Securities Fraud
(1) Positions of the Parties
Defendants argue that Plaintiffs' federal securities claim is not adequately pleaded because the FAC does not identify the federal statute that was allegedly violated. They also contend that the allegations pleaded in support of this claim do not satisfy various requirements imposed by the Private Securities Litigation Reform Act ("PSLRA"), including the certification requirement for class actions.
In response, Plaintiffs state that their claims arise under Rule 10b-5. They contend that each of the elements required to state such a claim is plausibly pleaded.
*1151 Plaintiffs also proffer a sworn certification prepared by Yan that was filed concurrently with their opposition to the 12(b)(6) Motion.[14]
(2) Legal Standards
Section 10(b) of the Exchange Act makes it unlawful for "any person ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or ... for the protection of investors." 15 U.S.C. § 78j(b). SEC Rule 10b-5, which is based on this statute, provides that it is unlawful to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person." 17 CFR 240.10b-5(c).
In a typical Rule 10b-5 private action, a plaintiff must prove each of the following: (i) a material misrepresentation or omission of fact; (ii) scienter; (iii) in connection with the purchase or sale of a security; (iv) transactional and loss causation; and (v) economic loss. Zucco Partners, LLC v. Digimarc Corp. , 552 F.3d 981, 990 (9th Cir. 2009). Deceptive conduct is also actionable under Rule 10b-5. See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta , 552 U.S. 148, 158, 128 S.Ct. 761, 169 L.Ed.2d 627 (2008) (there is no requirement under Rule 10b-5 of a "specific oral or written statement .... [c]onduct itself can be deceptive"). The Ninth Circuit has held that "operation of a pyramid scheme violates 10b-5's prohibition against engaging in an 'act, practice or course of business which operates as a fraud or deceit upon any person.' " Webster , 79 F.3d at 785 (quoting 17 CFR 240.10b-5(c) ).
Claims brought under Rule 10b-5 must satisfy the particularity requirements of Fed. R. Civ. P. 9(b). In re Daou Sys., Inc. , 411 F.3d 1006, 1014 (9th Cir. 2005). Further, under the PSLRA, a complaint must plead scienter with particularity. Id. Thus, it must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Id. (emphasis in original) (citation omitted). Scienter encompasses numerous mental states, including "intent to deceive, manipulate, or defraud," and "deliberate recklessness." City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc. , 856 F.3d 605, 619 (9th Cir. 2017) (citation omitted). To survive a challenge under Rule 12(b)(6), a securities fraud claim must satisfy the following standard: "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.' " Tellabs, Inc. v. Makor Issues & Rights, Ltd. , 551 U.S. 308, 324, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).
*1152 (3) Application
The operation of an endless chain or pyramid scheme is "an inherently deceptive ... practice." Webster , 79 F.3d at 788. As noted, the FAC alleges with sufficient particularity the existence of a pyramid scheme. Accordingly, the allegations pleaded in the FAC give rise to an inference of scienter, i.e. , that Defendants acted with the intent to "deceive, manipulate, or defraud" Distributors that is "at least as compelling as any opposing inference." Tellabs , 551 U.S. at 319, 324, 127 S.Ct. 2499. The other elements of Plaintiffs' Rule 10b-5 claim are also plausibly pleaded. See S.E.C. v. Chen , 2:15-CV-07425-RGK (PLAx), 2016 WL 7469683, at *8 (C.D. Cal. Dec. 8, 2016) ("Defendant offered to sell and sold securities in a pyramid scheme-a scheme to defraud under the Acts .... Since Defendant operated a pyramid scheme, he violated Rule 10b-5(c).").
For the foregoing reasons, the 12(b)(6) Motion is DENIED as to the eighth cause of action.
d) Ninth Cause of Action: Unjust Enrichment
(1) Positions of the Parties
Defendants contend that Plaintiffs' unjust enrichment claim fails because the relationship between Plaintiffs and Defendants is governed by the Independent Distributor Agreement. Thus, according to Defendants, that agreement covers "the same subject matter" as what is raised under this cause of action. In response, Plaintiffs argue that the unjust enrichment claim survives because it is a standalone cause of action and is asserted only against the individual Defendants-Hansen and Breshears.
(2) Legal Standards
"[U]njust enrichment is an action in quasi-contract." Paracor Fin., Inc. v. Gen. Elec. Capital Corp. , 96 F.3d 1151, 1167 (9th Cir. 1996). The elements of a claim of unjust enrichment are "receipt of a benefit and unjust retention of the benefit at the expense of another." Lectrodryer v. SeoulBank , 77 Cal. App. 4th 723, 726, 91 Cal.Rptr.2d 881 (2000). Thus, to recover for unjust enrichment, it must be shown that the "defendant obtained a benefit from the plaintiff by fraud, duress, conversion, or similar conduct." Abu-Lughod v. Calis , CV 13-2792 DMG (RZx), 2014 WL 12589324, at *4 (C.D. Cal. Oct. 9, 2014) (citing Durell v. Sharp Healthcare , 183 Cal. App. 4th 1350, 1370, 108 Cal.Rptr.3d 682 (2010) ).
(3) Application
The unjust enrichment claim is advanced against Breshears and Hansen. Neither is a party to the Independent Distributor Agreement. Further, as noted above, the alleged conduct that forms the basis for this cause of action falls outside of the scope of that agreement. For these independent reasons, the existence of the Independent Distributor Agreement between Plaintiffs and Kyäni does not foreclose Plaintiffs' unjust enrichment claim. Cf. Paracor Fin. , 96 F.3d at 1167 (an unjust enrichment claim "does not lie when an enforceable, binding agreement exists defining the rights of the parties").
For the foregoing reasons, the 12(b)(6) Motion is DENIED as to the ninth cause of action.
e) First Cause of Action: Declaratory Relief
(1) Positions of the Parties
Defendants argue that the declaratory relief claim should be dismissed because "none of the Plaintiffs' substantive claims are [sic] viable," and this cause of action is a request for an advisory opinion. For the reasons stated above, many of Plaintiffs' claims are viable. Accordingly, the 12(b)(6)
*1153 Motion is DENIED as to the first cause of action.
* * *
For the foregoing reasons, the 12(b)(6) Motion is GRANTED IN PART and DENIED IN PART . It is GRANTED as to the sixth and seventh causes of action, and those causes of action are DISMISSED without prejudice but without leave to amend. The 12(b)(6) Motion is otherwise DENIED .
C. Motion to Stay
1. Positions of the Parties
Defendants argue that this action should be stayed under the PSLRA until there is a ruling on the 12(b)(6) Motion. They argue in the alternative that this action should be temporarily stayed pending a determination as to arbitrability by the arbitrators. According to Defendants, the Independent Distributor Agreement delegates that question to the arbitrators.
Plaintiffs make several responses. First , a first-filed federal action should not be stayed in favor of a later-filed action.[15] Second , the automatic stay in the PSLRA should not apply where, as here, the "factual nuances and the secondary nature of Plaintiffs' sole securities claim" makes this an "exceptional case." Third, as to the request for a stay under 9 U.S.C. § 3, a stay may only be entered as ancillary relief pursuant to a properly filed motion to compel arbitration.[16] Plaintiffs argue in the alternative that the clause in the Independent Distributor Agreement that purportedly delegates gateway issues to an arbitrator is unenforceable, including because it is illusory.
2. The PSLRA-15 U.S.C. § 78u-4(b)(3)(B)
The PSLRA provides, in relevant part, that "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss." 15 U.S.C. § 78u-4(b)(3)(B). Thus, discovery "should be permitted in securities class actions only after the court has sustained the legal sufficiency of the complaint ." SG Cowen Secs. Corp. v. U.S. Dist. Court for N. Dist. of CA , 189 F.3d 909, 913 (9th Cir. 1990) (emphasis in original) (quoting S. Rep. No. 104-98, at 14 (1995) ).
The Motion to Stay is MOOT to the extent it seeks a stay under the PSLRA. Thus, this Order concludes that Plaintiffs' Rule 10b-5 claim is adequately pleaded.
3. The Federal Arbitration Act - 9 U.S.C. § 3
a) Legal Standards
Pursuant to 9 U.S.C. § 3 :
If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such *1154 arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.
"By its terms, the [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp. , 642 F.3d 849, 854 (9th Cir. 2011) (emphasis in original) (quoting Dean Witter Reynolds, Inc. v. Byrd , 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) ).
In Qualcomm Inc. v. Nokia Corp. , 466 F.3d 1366 (Fed. Cir. 2006), the Federal Circuit, applying Ninth Circuit law, considered what inquiry a district court should perform in order to be "satisfied" as to the arbitrability of an issue before ordering a stay under 9 U.S.C. § 3. Qualcomm concluded:
the district court should first inquire as to who has the primary power to decide arbitrability under the parties' agreement. If the court concludes that the parties did not clearly and unmistakably intend to delegate arbitrability decisions to an arbitrator, the general rule that the "question of arbitrability ... is ... for judicial determination" applies and the court should undertake a full arbitrability inquiry in order to be "satisfied" that the issue involved is referable to arbitration. AT&T Techs., Inc. v. Commc'ns Workers of Am. , 475 U.S. 643, 649, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). If, however, the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." See Dream Theater, Inc. v. Dream Theater , 124 Cal.App.4th 547, 21 Cal.Rptr.3d 322, 326 (2004). If the court finds that the assertion of arbitrability is not "wholly groundless," then it should stay the trial of the action pending a ruling on arbitrability by an arbitrator. If the district court finds that the assertion of arbitrability is "wholly groundless," then it may conclude that it is not "satisfied" under section 3, and deny the moving party's request for a stay.
Id. at 1371 (alterations in original).
Thus, "whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise. " Mohamed v. Uber Techs., Inc. , 848 F.3d 1201, 1208 (9th Cir. 2016) (alterations and internal quotation marks omitted) (emphasis in original). The Ninth Circuit has found such delegation where an arbitration provision incorporates by reference rules promulgated by the AAA that state, in relevant part, that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the ... validity of the arbitration agreement." Brennan v. Opus Bank , 796 F.3d 1125, 1130 (9th Cir. 2015).
Whether the incorporation of rules promulgated by the AAA always constitutes "clear and unmistakable" evidence of intent to delegate the question of arbitrability to an arbitrator irrespective of the contracting parties' sophistication is an open question in this Circuit. See Brennan , 796 F.3d at 1130 (a holding that the incorporation *1155 of the AAA rules in an at-will employment contract constituted an agreement to delegate arbitrability should not "be interpreted to require that the contracting parties be sophisticated or that the contract be 'commercial' before a court may conclude that incorporation of the AAA rules constitutes 'clear and unmistakable' evidence of the parties' intent"); Galilea, LLC v. AGCS Marine Ins. Co. , 879 F.3d 1052, 1062 (9th Cir. 2018) ("[W]e need not decide whether the Brennan rule applies when one or more party is unsophisticated. Both parties here are sophisticated with respect to contracting for insurance policies.").
District Courts have reached different conclusions as to whether incorporation of AAA rules in an arbitration provision constitutes "clear and unmistakable" evidence of delegation where the party challenging delegation is unsophisticated. Compare Meadows v. Dickey's Barbecue Rests. Inc. , 144 F.Supp.3d 1069, 1078-79 (N.D. Cal. 2015) (no "clear and unmistakable evidence" that franchisees intended an arbitrator to decide questions of arbitrability even though the AAA rules were incorporated in the arbitration provision because the franchisees were "far less sophisticated" than the franchisor-defendant, the relevant agreement was "complicated" and "contain[ed] a myriad of legal terms" and there was no evidence that any of the franchisees "had legal training or experience dealing with complicated contracts"), and Ingalls v. Spotify USA, Inc. , No. C 16-03533 WHA, 2016 WL 6679561, at *3 (N.D. Cal. Nov. 14, 2016) ("Every district court decision in our circuit to address the question since Brennan has held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."), with Diaz v. Intuit, Inc. , No. 5:15-cv-01778-EJD, 2017 WL 4355075, at *3 (N.D. Cal. Sept. 29, 2017) ("[B]oth before and after Brennan , courts in this district have consistently found that the reference to AAA rules evinces a clear and unmistakable intent to delegate arbitrability to an arbitrator, regardless of the sophistication of the parties"); Miller v. Time Warner Cable, Inc. , No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016 (the incorporation of AAA rules in an arbitration agreement unmistakably evidences the parties' intent to delegate questions of arbitrability to the arbitrator irrespective of the parties' sophistication).
b) Application
The arbitration provision in the Independent Distributor Agreement provides, in relevant part, that
all disputes and claims relating to Kyäni, the Distributor Agreement, the Kyäni Global Compensation Plan or its products, the rights and obligations of an independent Distributor and Kyäni, or any other claims or causes of action relating to the performance of either an independent Distributor or Kyäni under the Agreement or the Kyäni Policies and Procedures shall be settled totally and finally by binding arbitration in Idaho Falls, Idaho or such other location as Kyäni prescribes, in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association.[17]
*1156 This language is on the last page of the Independent Distributor Agreement, which is approximately three and a half pages long. It is not identified with a heading.
(1) Whether the Arbitration Provision Clearly and Unmistakably Delegates Arbitrability to the Arbitrator.
Plaintiffs' argument that the arbitration provision does not evidence the parties' "clear and unmistakable" intent to delegate questions of arbitrability to an arbitrator is persuasive. This outcome is supported because such intent is not necessarily shown as to an unsophisticated party to whom such intent is attributed solely by the incorporation by reference of the rules of the AAA. See Rent-A-Center v. Jackson , 561 U.S. 63, n.1, 130 S.Ct. 2772, 177 L.Ed.2d 403 (2010) (the "clear and unmistakable requirement" "pertains to the parties' manifestation of intent ," i.e. , it is an "interpretive rule" that is based on an "assumption about the parties' expectations" (emphasis in original) ). Additionally, counsel for Defendants acknowledged at the hearing that Kyäni does not link to the AAA rules on its website for prospective distributors' review, nor does it provide paper copies of them. This provides further support for the conclusion that the record does not show the parties' "clear and unmistakable" intent to delegate arbitrability to the arbitrators. Cf. Carbajal v. CWPSC, Inc. , 245 Cal. App. 4th 227, 244, 199 Cal.Rptr.3d 332 (2016) (an employer's failure to provide a copy of the AAA arbitration rules to which an employee would be bound supports a finding of procedural unconscionability). The provision as to deciding arbitrability is one of many in the 46-page set of the AAA rules.
This conclusion is also consistent with the terms of the forum selection clause in the Independent Distributor Agreement. It provides that a resolution of "any claims ... to interpret or enforce the terms" of the Independent Distributor Agreement shall be brought in a state court in Idaho. Independent Distributor Agreement § 12; cf. Momot v. Mastro , 652 F.3d 982, 988 (9th Cir. 2011) (parties clearly and unmistakably agreed to arbitrate the question of arbitrability where the arbitration provision delegated to the arbitrators the authority to determine "the validity or application of any of the provisions" of the arbitration clause).
(2) Whether Plaintiffs' Claims are Arbitrable
For the reasons stated above, whether Plaintiffs' claims are subject to arbitration is an issue that is not yet ripe for adjudication. Defendants make clear in the Motion to Stay that they are seeking "only 'a temporary stay' until the arbitrators have ruled on the threshold question of whether Plaintiffs must arbitrate their claims." Because the arbitration provision in the Independent Distributor Agreement does not clearly and unmistakably evidence an intent to delegate questions of arbitrability to the arbitrator, no temporary stay is required.
* * *
For the foregoing reasons, the Motion to Stay is DENIED .
IV. Conclusion
For the reasons stated in this Order, the Forum Non Conveniens Motion is DENIED . The 12(b)(6) Motion is GRANTED IN PART and DENIED IN PART . It is GRANTED as to the sixth and seventh causes of action, and those causes of action are DISMISSED without prejudice but without leave to amend. The 12(b)(6) Motion is otherwise DENIED . The Motion to Stay is DENIED .
The deadline for Defendants to file a motion to compel arbitration is May 14, 2018. Plaintiffs shall file their opposition *1157 by May 29, 2018, with Defendants to file their reply on or before June 5, 2018. A hearing is scheduled for July 2, 2018 at 8:30 a.m. A Scheduling Conference is also set for the same date and time. The Court will be setting dates in the event the motion to compel arbitration is denied. Counsel shall file an updated Joint Rule 16(b)/26(f) Report no later than June 22, 2018, which shall attach an amended schedule of pretrial and trial dates.
IT IS SO ORDERED .

The use of first names to identify those with common surnames follows the common practice designed to facilitate the discussion in this Order. No disrespect is intended by the use of this common convention.

Plaintiffs submitted numerous evidentiary objections to the evidence Defendants rely on in the Forum Non Conveniens Motion. Dkts. 26, 61. Defendants also submitted numerous evidentiary objections to the evidence Plaintiffs rely on in opposition to the Forum Non Conveniens Motion. Dkts. 33, 60. These objections are addressed in the orders filed concurrently with this Order. Dkts. 73, 74.

Hansen was not served until March 28, 2018. See Dkt. 64.

The Independent Distributor Agreement also includes an arbitration provision that is broader than the forum selection clause. As noted, it provides, in relevant part, that:
all disputes and claims relating to Kyäni, the [Independent] Distributor Agreement, the Kyäni Global Compensation Plan or its products, the rights and obligations of an independent Distributor and Kyäni, or any other claims or causes of action relating to the performance of either an independent Distributor or Kyäni under the [Independent Distributor Agreement] Agreement or the Kyäni Policies and Procedures shall be settled totally and finally by binding arbitration in Idaho Falls, Idaho[.]
Independent Distributor Agreement § 12.
"An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." Scherk v. Alberto-Culver Co. , 417 U.S. 506, 519 [94 S.Ct. 2449, 41 L.Ed.2d 270] (1974) ; see also Manetti-Farrow , 858 F.2d at 514 n.4 (citing Scherk for the proposition that "an agreement to arbitrate is actually a specialized forum selection clause"). At least one Circuit has held that a "court may dismiss for improper venue based on either a forum-selection clause or an arbitration provision; both are properly asserted as objections to venue." Faulkenberg v. CB Tax Franchise Sys., LP , 637 F.3d 801, 804 (7th Cir. 2011) (emphasis in original); see also Pollara v. Radiant Logistics Inc. , CV 12-0344 GAF (SPx), 2012 WL 12887094, at *5 (N.D. Cal. Mar. 20, 2012) (same). Defendants did not advance this argument in support of the Forum Non Coveniens Motion. Indeed, they expressly disclaimed any reliance on the arbitration clause in seeking dismissal of this action in the Forum Non Conveniens Motion. See Forum Non Conveniens Motion, Dkt. 17 at 5 ("[T]he parties' operative agreements ... also contains [sic] a mandatory arbitration clause. However, it is Defendants' view that the proper court to rule on the arbitrability of this dispute is the Idaho state court."). Because this issue was not raised, it is not addressed in this Order.

There is one potential exception to this determination. The first cause of action in the FAC appears to seek a judicial declaration that the arbitration provision in the Independent Distributor Agreement is unenforceable. For this reason, Defendants argue that the forum selection clause "plainly covers" the first cause of action. However, Defendants have not moved to compel arbitration. Instead, they state in a footnote that they believe the "proper court to rule on the arbitrability of this dispute is the Idaho state court." Forum Non Conveniens Motion, Dkt. 17 at 5. Defendants do not explain the basis for this position. Further, in support of the Motion to Stay, Defendants, advance what could be seen as an inconsistent argument, i.e. , that the Independent Distributor Agreement delegates questions of arbitrability to the arbitrators. Because Defendants have not moved to compel arbitration in this action, these issues have not yet been presented for review. Therefore, they are reserved until one or both parties present them through an appropriate motion. If Defendants elect to bring a motion to compel arbitration in this action, in the corresponding, the parties shall address these issues, including whether questions concerning the enforceability of the arbitration clause, and its application to some or all of the claims in the FAC, are to be addressed by this Court in light of the forum selection clause in the Independent Distributor Agreement.

That the terms of Kyäni's Global Compensation Plan (the "Compensation Plan") may be introduced into evidence if this action proceeds here does not warrant a different outcome. Although the Independent Distributor Agreement states that the Compensation Plan is "incorporated into and made a part" of the Independent Distributor Agreement, a copy of the Compensation Plan has not been submitted in connection with these proceedings. Without a complete copy of the Compensation Plan, its relevance, if any, to the claims advanced in the FAC cannot be assessed. Moreover, the resolution of the claims pleaded in the FAC will not turn on an interpretation of the terms of the Compensation Plan. Thus, the "rights or duties" imposed by the Compensation Plan are not at issue in this action. See Dimon v. United Serv. Assoc. for Health Care , 2013 WL 12140471, at *2 (C.D. Cal. Apr. 9, 2013) (plaintiff's promissory fraud and fraud by concealment claims against his insurer did not fall within the scope of the forum selection clause in his health care policy that provided that "any action or suit brought to enforce or construe" the policy should be brought in a designated forum because the insurer's "duties and obligations under the policy, or its compliance (or lack thereof) with the policy ha[d] no bearing" on those claims). The core allegations of the FAC are that Kyäni is an unlawful, endless chain scheme and that Plaintiffs, and other similarly situated individuals, were fraudulently induced to become Distributors through certain misrepresentations made by Defendants. These are not claims "to interpret or enforce the terms" of the Compensation Plan; the "rights and duties" imposed there are not in dispute. Instead, Plaintiffs are challenging Kyäni's advertising practices and business model. Resolution of these questions will not require an analysis as to whether the parties "were in compliance" with the Compensation Plan. See Manetti-Farrow, Inc. , 858 F.2d at 514 (claims fell within the scope of the forum selection clause because each "relate[d] in some way to rights and duties enumerated" in the contract containing the forum selection clause).

Plaintiff's citation to Runcorn v. Shearer Lumber Prods., Inc. , 107 Idaho 389, 690 P.2d 324, 332 (1984) and Barringer v. State , 111 Idaho 794, 727 P.2d 1222, 1225 (1986) for the proposition that, under Idaho law, "choice-of-law provisions are narrowly interpreted" is not persuasive. No evidence was presented in either of those cases that the parties had agreed to a choice of law provision relevant to their underling dispute. See Runcorn , 690 P.2d at 332 (a reciprocity agreement entered into by the Idaho Accident Board and the Washington Department of Labor & Industries did not require application of Washington law to the claims advanced by the plaintiff, a boiler repairman who was injured in Idaho while repairing a boiler, against his Washington state employer); Barringer , 727 P.2d at 1225 (rejecting the same argument made in Runcorn ).

Defendants also argue that Plaintiffs lack standing to assert the tenth cause of action, which arises under the California Seller Assisted Marketing Plan Act ("CSAMPA"), because they have not alleged that they were injured by any violation of that statute. This position is not persuasive. The CSAMPA provides that "[a]ny purchaser injured by a violation of this title or by the seller's breach of a contract subject to this title or of any obligation arising from the sale or lease of the seller assisted marketing plan may bring any action for recovery of damages." Cal. Civ. Code § 1812.218. The FAC alleges that each Plaintiff paid Defendants approximately $1500 to become a Distributor in reliance on certain misrepresentations made about Kyäni's profitability. FAC ¶¶ 94, 96. These allegations establish that plaintiffs have standing to sue under CSAMPA. Cf. Hinojos v. Kohl's Corp. , 718 F.3d 1098, 1104 (9th Cir. 2013) (those who have had "business dealings" with the defendant and who have "lost money or property as a result of the defendant's unfair business practices" have standing to sue under California's Unfair Competition Law and False Advertising Law (internal quotations and citation omitted) ). Moreover, the case cited by Defendants-Boorstein v. Men's Journal LLC , No. CV 12-771 DSF EX, 2012 WL 2152815 (C.D. Cal. June 14, 2012) -is distinguishable. See id. at *2 (plaintiff failed to plead that he was injured under California's Shine the Light ("STL") law based on the defendant's failure "to properly designate its contact information or provide a description of California consumers' rights" because the complaint did not plead how the plaintiff was injured, i.e. , did not allege that the plaintiff "sought STL disclosures from Defendant, or that he would have done so had the proper information been accessible"). The FAC, by contrast, adequately pleads injury. Accordingly, the 12(b)(6) Motion is DENIED as to the claim that Plaintiffs lack standing to bring the tenth cause of action.

Plaintiffs' argument that the endless chain scheme cause of action is not subject to Rule 9(b)'s heightened pleading standard because "the elements of" an endless chain scheme "do not include any mens rea or intent requirement" is not persuasive. Indeed, the Ninth Circuit has observed that
in cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct. In some cases, the plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of a claim. In that event, the claim is said to be "grounded in fraud" or to "sound in fraud," and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b).
Vess , 317 F.3d at 1103-04.

Defendants' reliance on Kearns v. Ford Motor Co. , 567 F.3d 1120 (9th Cir. 2009) to support their argument that these claims are not adequately pleaded is misplaced. There, the complaint failed adequately to allege violations of the California Consumers Legal Remedies Act and the UCL based on misrepresentations the defendant allegedly made regarding its pre-owned vehicle program. The basis for this determination was that the challenged complaint did not specify what statements were made in the allegedly misleading advertisement, when the plaintiff learned about them, on which advertisements the plaintiff relied in deciding to purchase the defendant's product or who made certain alleged misleading statements. Id. at 1126. Kearns did not involve an alleged "endless chain" or pyramid scheme. By contrast, the claims in the FAC are based on the alleged operation of a pyramid scheme. Therefore, the alleged fraud underlying these claims is "the operation and promotion of a pyramid scheme, and that is what must be plead[e]d with particularity." Martinez v. MXI Corp. , No. 3:15-cv-00243-MMD-VPC, 2016 WL 951430, at *5 (D. Nev. Mar. 9, 2016) (emphasis in original). Thus, in this context, the "who, what when, where and how" of the alleged fraud is adequately pleaded because the alleged pyramid scheme is described in sufficient detail.

The FAC alleges, for example, that in 2016, Kyäni, through its "representatives," "managers" and "executive team," including Breshears and Hansen, made certain misrepresentations to Plaintiffs and the putative class members. FAC ¶¶ 24, 78. It then alleges that at training seminars held in Los Angeles, Kyäni represented to Plaintiffs that Distributors can earn a $100 "sponsor bonus," as well as an $800 "fast start bonus" and can recoup their investment in 30 days. Id. ¶ 27. It also alleges that Kyäni's advertising campaign was misleading because it featured only successful Distributors, failed to disclose the percentage of Distributors who make any money from Kyäni distributorship and minimized the risks associated with operating as a Distributor. Id. ¶ 144.

Plaintiffs' argument that they "applied significant effort towards the business opportunity in selling the products ... of Kyäni" is not consistent with the allegations pleaded in the FAC. Moreover to the extent Plaintiffs argue that they expended significant effort in "selling ... the distributorships," that argument is consistent with a finding that the amounts Plaintiffs paid to Kyäni were "investment contracts."

These claims are dismissed without prejudice but without leave to amend to preserve Plaintiffs' ability to reassert them later in the litigation if evidence is presented that Plaintiffs' investments in the alleged pyramid scheme did not constitute securities.

The PSLRA requires that a plaintiff seeking to represent a securities class action file, contemporaneously with the complaint, a certification that:
(1) confirms the plaintiff did not purchase the securities at issue at the direction of counsel, (2) shows the plaintiff is willing to serve as a representative party on behalf of the class, (3) identifies all transactions by the plaintiff in the security at issue during the relevant time period, (4) identifies all other actions filed during the preceding three years in which the plaintiff served or sought to serve as a representative party, and (5) certifies that the plaintiff's recovery will be limited to his or her pro rata share, except as ordered by the court.
Kronk v. Landwin Group, LLC , No. SACV 10-00344-CJC(MLGx), 2010 WL 11515249, at *1 (C.D. Cal. Aug. 10, 2010) (citing 15 U.S.C. § 78u-4(a)(2)(A) ). The certification prepared by Yan satisfies this standard. See Ex. J to Declaration of Blake J. Lindemann ("Lindemann Decl."), Dkt. 54-12 (Certification of Yan).

This argument in general, and Plaintiffs' reliance on McGreghar Land Co. v. Meguiar , 521 F.2d 822 (9th Cir. 1975) in particular, is not persuasive. In McGreghar , the proceedings that paralleled those filed in federal court had been filed in state court. Here, by contrast, the "parallel" proceedings consist of demands for arbitration filed with the AAA. Additionally, Plaintiff's reliance on In re Burley , 738 F.2d 981 (9th Cir. 1984) for the proposition that "when actions involving nearly identical parties and issues have been filed in two different district courts, the court in which the first suit was filed should generally proceed to judgment" is not persuasive. Defendants' demands for arbitration have been brought before the AAA; there is no other case pending in the district courts.

Plaintiffs have cited to no legal authority that supports this proposition, and the Court has found none. Motions to stay brought under § 3 are routinely adjudicated notwithstanding that a motion to compel arbitration is not pending. See, e.g. , Baysand Inc. v. Toshiba Corp. , 2015 WL 7293651 (N.D. Cal. Nov. 19, 2015).

The Commercial Arbitration Rules promulgated by the AAA "delegate[ ] all jurisdictional questions, including arbitrability, to the arbitrator." Meadows , 144 F.Supp.3d at 1077 ; see Commercial Arbitration Rules and Mediation Procedures (Oct. 1, 2013) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.").